UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHEPP ELECTRIC COMPANY, INC., | ) | Case No.: 1:20 CV 452 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| RUSTY BOYER, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case are Plaintiff Shepp Electric Company, Inc. ("Plaintiff" or "Shepp Electric") and Non-Party Craig Shepp's Motion for a Protective Order (ECF No. 61); Plaintiff's Motion for a Rule 11(b) and (c) Determination ("Rule 11 Motion") (ECF No. 66); and Plaintiff's Motion to Stay (ECF No. 72). Also pending is Defendants Rusty Boyer ("Boyer") and Generator One, LLC's ("Generator One") Motion to Show Cause (ECF No. 64).

For the reasons that follow, the court denies the Motion for Protective Order, grants in part and denies in part the Motion to Show Cause, denies the Rule 11 Motion, and denies the Motion to Stay.

**I. BACKGROUND**

**A.     Factual Background**

Shepp Electric is an Ohio corporation, which sells and installs residential and commercial

generators in northeastern Ohio and western Pennsylvania. (Am. Compl. ¶ 1, ECF No. 48.) In addition, Shepp Electric is one of the largest Generac brand standby generator dealers in this area. (*Id*.) Defendant Boyer is a former employee of Shepp Electric who was terminated in 2006 for "[stealing] a transfer switch, having a personal firearm/handgun in a company vehicle without permission, and conducting personal business on company time." (*Id*. ¶ 3.) In 2013, nearly seven years after Boyer was terminated by Shepp Electric, he and non-party John Mattingly ("Mattingly") started a Generac dealership named Your Generator Connection, LLC. (*Id*. ¶ 11(d).) Six years later, Boyer changed the business name to Generator One, LLC. (*Id*.) According to the Complaint, Boyer is the President of Generator One, and Mattingly is the Vice President. (*Id*. ¶ 5.) The main thrust of Plaintiff's claims against Boyer and Generator One is that Boyer improperly registered the internet domain name "sheppelectric.com" with GoDaddy.com in an effort to obtain business that was intended to go to Shepp Electric. (*Id*. ¶¶ 3–4.) Specifically, Plaintiff alleges that Boyer and Generator One "caused internet searches for 'sheppelectric.com' to result in a transfer to his or his company's website." (*Id*. ¶ 11(h).)

**B. Procedural History**

On September 3, 2021, Plaintiff and non-party Craig Shepp filed a Motion for a Protective Order (ECF No. 61), which seeks an order prohibiting Defendants from harassing or oppressing non-party Craig Shepp at his individual and 30(b)(6) depositions. On September 17, 2021, Defendants filed an Opposition to the Motion for a Protective Order (ECF No. 66), to which Plaintiff replied (ECF No. 68) on September 23, 2021.

On September 17, 2021, Defendants filed a Motion to Show Cause (ECF No. 64), which asks the court for an order directing Plaintiff to show cause as to why it should not be held in contempt

of court for disclosing confidential settlement communications during its deposition of non-party John Mattingly. On September 21, 2021, Plaintiff filed an Opposition to the Motion to Show Cause (ECF No. 66), to which Defendants replied (ECF No. 69) on September 28, 2021.

On September 21, Plaintiff filed a Rule 11 Motion (ECF No. 66), asserting that Defendants' Motion to Show Cause violates Rule 11 of the Federal Rules of Civil Procedure. On October 1, 2021, Defendants filed an Opposition to the Rule 11 Motion (ECF No. 70). On October 5, 2021, Plaintiff filed a Notice of Withdrawal of the Rule 11 Motion (ECF No. 71), indicating that it was withdrawing its Rule 11 Motion pursuant to Rule 11(c) to allow Defendants "the 21-day described in Fed. R. Civ. P. 11(c) to withdraw their . . . pending motion to show cause." (*Id*.) In the Notice, Plaintiff stated that, "[i]f Defendants and their attorney have not withdrawn Defendants' Motion by October 13, 2021, Shepp's Motion will be refiled with this Court." (*Id*.) Defendants did not withdraw their Motion to Show Cause, and Plaintiff did not refile its Rule 11 Motion. Accordingly, the court hereby denies the Rule 11 Motion (ECF No. 66) as moot in light of the Notice of Withdrawal. Out of an abundance of caution, the court also notes that it would deny the Rule 11 Motion for the independent reason that Plaintiff's basis for the Rule 11 Motion—namely, its assertion that "neither the relevant facts nor law support" Defendants' Motion to Show Cause—lacks merit.

Lastly, on October 22, 2021, Plaintiff filed a Motion to Stay (ECF No. 72), which asks the court to stay the case pending resolution of a case filed in state court by Defendants. On November 5, 2021, Defendants filed an Opposition to the Motion to Stay (ECF No. 73), to which Plaintiff replied (ECF No. 74) on November 9, 2021.

## II. LAW AND ANALYSIS

### A. Motion for a Protective Order

The crux of the Motion for a Protective Order is Plaintiff's contention that Defendants' questioning while deposing non-party Craig Shepp—both as an individual witness and as Shepp Electric's 30(b)(6) representative—constituted "harassment" or "oppression." Specifically, Plaintiff takes issue with two lines of Defendants' questioning: (1) their questioning of Craig Shepp about a 2013 case filed in the Lake County Court of Common Pleas, captioned *Shepp Electric Company, Inc., v. Boyer, et al*. (the "2013 case"), in which Shepp Electric sued Rusty Boyer, Your Generator Connection, and Craig Shepp's son, Nathan Shepp; and (2) Defendants' inquiry into a negative Better Business Review that Shepp Electric received from a potential customer (the "BBB Review"). After Defendants made clear that they intended to continue to ask questions about the 2013 case and the BBB Review, Plaintiff terminated both depositions and filed the Motion for a Protective Order. The court will address each line of questioning in turn.

First, the court finds that the line of questioning related to the 2013 case does not constitute harassment or oppression and is relevant to the claims or defenses in this case. The 2013 case centered on Shepp Electric's assertion that the defendants violated a non-compete agreement between the parties in that case. At deposition, Plaintiff objected to Defendants' questioning about the 2013 case, on the basis of relevance, arguing that the 2013 case is not referenced in any paragraph of Plaintiff's Complaint. (Ex. 2 to Mot. for Protective Order, Partial Dep. Tr. 8:8-11:2, ECF No. 61-2.) In their opposition to the Motion, Defendants explain that "[t]he [2013 case] and its settlement is central to Mr. Boyer's and Generator One's key affirmative defense of release, as well

as their Counterclaims against Shepp Electric." (Opp'n to Mot. for Protective Order at PageID #627, ECF No. 65.) It is worth noting that Defendants' Counterclaims against Shepp Electric (ECF Nos. 59, 60) were filed on September 3, 2021, which was approximately a week and a half after the depositions at issue took place. The timing of the filing of the Counterclaims is relevant because it appears that the first time the 2013 case and its settlement was explicitly referenced in this case is the Counterclaims. However, it is also worth noting that Defendant Boyer filed his Answer prior to the depositions at issue, and in his Answer his stated that "[s]ome or all of the claims asserted against Defendant are barred by the equitable doctrines of laches, **settlement**, breaches of representations and warranties, accord and satisfaction, **release**, discharge, waiver, equitable estoppel, promissory estoppel, consent, acquiescence, or implied consent." (Def. Boyer's Answer ¶ 48, ECF No. 53) (emphasis added). Whether or not it was clear to Plaintiff that Defendants were referencing Boyer's Answer during the deposition, it is clear that the Answer raised issues sufficient to justify questioning related to the 2013 case.

After reviewing Defendants' Answers and Counterclaims, the court agrees with Defendants that the 2013 case is relevant to their claims and defenses in this case as Defendants specifically allege in their Counterclaims that the terms of the settlement agreement reached in the 2013 case bars Plaintiff's cybersquatting claims in this case. (Def. Generator One's Counterclaim ¶¶ 8–15, ECF No. 59; Def. Boyer's Counterclaim ¶¶ 7–13, ECF No. 60.) Accordingly, the court denies Plaintiff's Motion for a Protective Order to the extent that it seeks an order prohibiting Defendants from questioning Craig Shepp about the 2013 case.

Second, the court finds that the BBB Review line of questioning did not constitute "harassment" or "oppression" and is within the scope of the 30(b)(6) notice (the "Notice"). The BBB

Review concerns a negative review that Shepp Electric received from a potential customer who complained that they reached out to Shepp Electric to get an estimate on a generator but never heard back. (Ex. 6 to Mot., BBB Review, ECF No. 61-6.) In questioning the witness about the BBB Review, Defendants asked the witness whether the author of the review "believe[d] he received an all-inclusive firm price in writing, based on his review[.]" (Ex. 3 to Mot. for Protective Order, Partial Dep. Tr. 8:12-8:13, ECF No. 61-5.) Plaintiff objected to this question on the grounds that it was outside the scope of the topics listed in the Notice. In response, Defendants countered that this line of questioning was related to topic 27 of the Notice, which states "[i]dentify and explain the facts, events, transactions, knowledgeable persons and documents related to Plaintiff's claim that Mr. Boyer's or Generator One's alleged conduct was in bad faith." (Ex. 4 to Mot. for Protective Order, 30(b)(6) Notice, ECF No. 61-4.) Plaintiff disagreed and terminated the deposition after Defendants indicated that they were not going to move on to a different topic.

After considering the parties' arguments, the court concludes that the BBB Review line of questioning was not permissible under topic 27 of the Notice, however, it is permissible and relevant under topic 38 of the notice, which was not identified at the time of the deposition. Specifically, topic 38 of the notice states "[i]dentify Plaintiff's advertising, marketing, and sales practices over the past seven (7) years." (*Id*.) Defendants maintain the BBB Review line of questioning is relevant to topic 38 of the notice because Plaintiff "claims that customers would receive an up-front, all-inclusive firm price in writing." (Opp'n to Mot. for Protective Order at PageID #629, ECF No. 65.) While Plaintiff takes issue with the form of the question—specifically, Plaintiff contends that asking what the author of the review "believed" renders this question outside the scope of topic 38—the court finds that the BBB Review line of questioning is within the scope of the Notice as it relates to

Plaintiff's advertising, marketing or sales practices. To the extent that Plaintiff's objection was based on the question being outside the scope of topic 27, the court concludes that the objection is well taken because topic 38 was never mentioned at the 30(b)(6) deposition. However, the court denies Plaintiff's Motion for a Protective Order to the extent that he seeks an order prohibiting Defendants from questioning Craig Shepp about the BBB Review because such questioning is permissible and relevant under topic 38 of the Notice.

Before turning to the Motion to Show Cause, the court pauses to note that Plaintiff's termination of the above-mentioned depositions has created an unfortunate delay in the case. Consequently, to the extent that Defendants wish to complete the above-mentioned depositions, the court encourages the parties to work collaboratively to resolve any issues that may arise so that the case can proceed in a timely fashion.

**B.     Motion to Show Cause**

Defendants' Motion to Show Cause centers on their contention that Plaintiff violated the privilege that attaches to settlement communications by inquiring into and disclosing such communications during the course of Plaintiff's deposition of non-party John Mattingly. Specifically, Defendants assert that Plaintiff violated the mediation privilege by disclosing "the amount of the settlement offer communicated in confidence . . . pursuant to the mediation protocols established in this matter by [the] Magistrate Judge." (Mot. to Show Cause at PageID #610, ECF No. 64.) Further, Defendants maintain that during the course of Mr. Mattingly's deposition, Plaintiff improperly disclosed the amount of a confidential settlement (the "Nappi Settlement") that Defendants reached with a third party, Lauren Nappi, who was a former customer of Generator One. (*Id.*) Plaintiff counters that "[its] settlement demand and Defendants' settlement offer were made pursuant to this

Court's April 6, 2021 (Doc. 29) Order and not as part of any mediation protocol . . . [s]ince no mediation has occurred, [Local Rule 16.6(h)] does not support Defendants' attorneys' motion for an order to show cause." (Resp. to Mot. to Show Cause at PageID #665, ECF No. 66.) In addressing the disclosure of the Nappi Settlement, Plaintiff contends that Defendants' argument lacks merit because it is based on speculation. (*Id*. at PageID #666.) The court will consider each argument in turn.

First, as Defendants point out, Local Rule 16.6(h) clearly states that "[t]he **entire mediation process** is confidential and privileged . . . [and that] [t]he parties and the Mediator may not disclose information regarding the process, **including settlement terms**, to the Court or to third persons unless all parties otherwise agree." Local Rule 16.6(h) (emphasis added). It is undisputed that the settlement offer at issue was made pursuant to the request of the Magistrate Judge, who was set to conduct a mediation conference after he received the parties' mediation statements, Plaintiff's pre-mediation demand, and Defendants' offer. Simply put, it defies logic and common sense to suggest that a settlement offer made at the request of the Magistrate Judge is not part of the mediation process. Accordingly, the court concludes that Defendants' offer was protected by the mediation privilege described in Local Rule 16.6(h) and thus, hereby orders Plaintiff to show cause in writing within 7 days of this Order as to why it should not be held in contempt of court for its disclosure of the amount of Defendants' offer during Mr. Mattingly's deposition.

Turning to the Nappi Settlement, the court denies Defendants' request for an order compelling Plaintiff to disclose how it learned about the amount of the settlement. On this point, Defendants cite *Hammonds v. Aetna Cas. & Sur. Co.*, 237 F.Supp 96, 102 (N.D. Ohio 1965) and *Biddle v. Warren Gen. Hosp.*, 715 N.E.2d 518, 528 (Ohio 1999), for the proposition that "[a] third

party can be held liable for wrongfully inducing another to divulge confidential information without authorization or privilege to do so." (Mot. to Show Cause at PageID #612–613, ECF No. 64.) However, Defendants' reliance on *Hammonds* and *Biddle* is misplaced because those cases were based on the unauthorized disclosure of an individual's medical records. *See Hammonds*, 237 F. Supp. at 101; *Biddle*, 715 N.E.2d at 399 (citing *Hammonds*). Indeed, in *Valente v. Porter, Wright, Morris & Arthur, L.L.P.*, 2010 WL 5239186 at *2 (Ohio Ct. App. Dec. 16, 2010), an Ohio appellate court considered the scope of third party liability established in *Biddle* and explained that "[it was] unaware of any Ohio cases that extended *Biddle's* holding beyond the breach of confidentiality that occurs when a third party obtains an individual's medical records without his consent . . . [i]n fact, *Biddle* has been cited numerous times in Ohio cases, none of which extend its holding beyond the realm of medical records." *Id* (collecting cases). Because the unauthorized disclosure in this case does not involve medical records and because Defendants have not cited any legal authority which suggests that Plaintiff could be liable for allegedly inducing Ms. Nappi for disclosing the amount of the Nappi Settlement, the court denies the Motion to Show Cause in regard to the confidential settlement that Defendants reached with Ms. Nappi.

**C.    Motion to Stay**

Plaintiff's Motion to Stay is premised on the *Colorado River* abstention doctrine. As another court in this district has stated, "[t]he *Colorado River* abstention doctrine recognizes that for a federal court and the state court to focus simultaneously on the same issue would be a waste of limited judicial resources." *Walker v. Cedar Fair, L.P.*, 520 F. Supp. 3d 925, 929 (N.D. Ohio 2021). The threshold question in the court's *Colorado River* analysis is whether the federal and state cases are parallel. *Id*. If the court determines that the cases are parallel, then the court will consider whether

abstention is appropriate by balancing the following factors:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Paat v. Messner*, No. 2:20-CV-3680, 2020 WL 8366158, at *1 (S.D. Ohio Dec. 15, 2020); *see also Brown v. City of Allen Park*, No. CV 17-12403, 2017 WL 6539044, at *3 (E.D. Mich. Dec. 21, 2017) (explaining that "[w]hen evaluating these factors, the abstention decision does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction").

Starting with the parallel requirement, the Sixth Circuit has explained "exact parallelism is not required; it is enough if the two proceedings are substantially similar." *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 394 (6th Cir. 2019). Here, it is undisputed that Defendants filed the 2021 state court case against non-party Craig Shepp, asserting that Craig Shepp caused Shepp Electric to breach the terms of a settlement agreement (the "Settlement Agreement")—the Settlement Agreement resolved the 2013 case discussed above—by filing this action. It is also undisputed that Plaintiff's alleged breach of the Settlement Agreement was raised both as a defense to this action as well as a Counterclaim in this action. (Def. Generator One's Answer ¶ 48, ECF No. 59; Def. Generator One's Countercl. ¶ 8.n, ECF No. 59.) Accordingly, the court finds that the cases are substantially similar because it appears that the issues raised relative to the Settlement Agreement may be dispositive of this action. Indeed, if the court determines that the Settlement Agreement bars Plaintiff from bringing the claims raised in this action, then Plaintiff's claims must fail as a matter

of law. Because the Settlement Agreement is potentially dispositive of this case, the court finds that the parallel requirement is satisfied. *See Walker*, 520 F. Supp. 3d at 929–30 (stating that, "[i]n deciding whether cases are parallel for abstention purposes, the critical question is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case").

Having determined that the cases are sufficiently parallel, the court turns now to the eight *Colorado River* factors. The first factor—whether the state court has assumed jurisdiction over any res or property—weighs against abstention because there is no res or property at issue in this dispute. The second factor—whether the federal forum is less convenient to the parties—weighs against abstention because both forums are relatively convenient to the parties as they are both in the northeast Ohio area. *See Intelligrated Sys., LLC v. Hy-Tek Material Handling Installation Servs.*, No. 1:21-CV-807, 2022 WL 1423169, at *3 (S.D. Ohio May 5, 2022) (finding that the second factor weighed against abstention because "[t]he minor difference in distance between [the federal] forum and the state forum [was] not large enough to render [the federal] court inconvenient"). The third factor—whether abstention would avoid piecemeal litigation—tilts in favor of abstention because the Settlement Agreement is at issue in both cases so there is a possibility of a duplicative judicial effort and potentially conflicting results. *See Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998) (explaining that "[p]iecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results"). The fourth factor—the order in which jurisdiction was obtained—weighs against abstention because this action was filed before the state case. The fifth factor—whether the source of governing law is state or federal—weighs against abstention because state law issues are not "novel" or "difficult." *See*

-11-

*Frame v. Humility of Mary Health Partners*, No. 4:08-CV-1712, 2009 WL 1659138, at *6 (N.D. Ohio June 12, 2009) (explaining that, "when the state law is not novel or difficult, but a more routine matter of negligence, it does not provide a basis by which the federal court can justify deferring the exercise of its jurisdiction"). The sixth factor—the adequacy of the state court action to protect the federal plaintiff's rights—slightly weighs in favor of abstention because there is nothing to suggest that the state court is unable to protect Plaintiff's federal rights. However, as another court has stated, "[t]he fact that the state court will protect the defendant's rights under the federal law does not provide the 'exceptional' circumstances necessary to justify abstention." *See Brown v. City of Allen Park*, No. CV 17-12403, 2017 WL 6539044, at *5 (E.D. Mich. Dec. 21, 2017) (citing *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 209 (6th Cir. 2001)). The seventh factor—the relative progress of the state and federal proceedings—weighs against abstention because the court has reviewed the docket in the state case, and it appears that it is still in the early stage of the litigation, so it cannot be said that the state case is progressing more quickly than the federal case. *See Med. Quant USA, Inc. v. Karns*, No. 1:16-CV-2081, 2016 WL 6996149, at *5 (N.D. Ohio Nov. 29, 2016) (finding that this factor weighed against abstention where "each case [was] roughly at the same, early stage of litigation"). Lastly, the eighth factor—the presence or absence of concurrent jurisdiction—weighs against abstention because the state court does not have concurrent jurisdiction with this court as there are no federal claims at issue in the state court litigation. *See Preferred Care, Inc. v. Howell*, 187 F. Supp. 3d 796, 807 (E.D. Ky. 2016) (explaining that, "if concurrent jurisdiction exists, then the court is more likely to abstain").

On balance, the overwhelming majority of the *Colorado River* factors weigh against abstention. Indeed, this case is not one in which there are "'exceptional' circumstances, the 'clearest

of justifications,' that can suffice under *Colorado River* to justify the surrender of th[e] [court's] jurisdiction." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983). Consequently, the court finds that abstention is not appropriate in this case and hereby denies the Motion to Stay. As a result, Plaintiff shall file an answer to Defendants' Counterclaim within 14 days of the date of this Order.

### III. CONCLUSION

For the foregoing reasons, the court denies the Motion for Protective Order (ECF No. 61), grants in part and denies in part the Motion to Show Cause (ECF No. 64), denies the Rule 11 Motion (ECF No. 66), and denies the Motion to Stay (ECF No. 72). The court hereby orders Plaintiff to show cause in writing within 7 days of the date of this Order as to why it should not be held in contempt of court for its disclosure of the amount of Defendants' offer during Mr. Mattingly's deposition. The court hereby sets a telephonic status conference in the within case with counsel for the parties on August 10, 2022, at 2:00 p.m., to discuss the status of the case.

IT IS SO ORDERED.

> */s/ SOLOMON OLIVER, JR.*
> UNITED STATES DISTRICT JUDGE

July 20, 2022